UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HERMAN LANCASTER,                                            :
                                                             :
                        Petitioner,                          :
                                                             :
                v.                                           :     **DECISION & ORDER**
                                                             :     20-CV-1678 (WFK) (LB)
MICHAEL CAPRA,                                               :
                                                             :
                        Respondent.                          :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** Herman Lancaster ("Petitioner") brings this petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, ECF No. 1 (the "Petition"), challenging his conviction for Murder in the Second Degree, and Two Counts of Criminal Possession of a Weapon. Pet. at 1. Petitioner raises three claims: the use of showup identification violated his due process rights; the trial court erred when it denied his motion for acquittal; and the trial court erred when it admitted evidence without sufficient chain of custody. *Id.* at 2–4. For the reasons set forth below, the Petition is DENIED in its entirety.

## BACKGROUND

### I. Conviction and Sentencing

On January 27, 2015, at approximately 2:45 p.m., inside and outside of a bodega at 2073 Nostrand Avenue in Brooklyn, Petitioner repeatedly fired a gun at Kerwin Craigwell. One of Petitioner's gunshots struck Craigwell in the middle of his lower back, killing him. Affirmation of Ann Bordley in Opp. to Pet. ¶ 4, ECF No. 9-1 ("Bordley Aff."). The crime was recorded by surveillance cameras that were mounted inside and outside of the bodega. *Id.* ¶ 5. In addition, a bodega employee, Mosleh Abdalla, witnessed the shooting. *Id.* Petitioner was arrested within minutes of the crime, approximately one block away from the scene of the crime. *Id.* ¶ 6. Abdalla identified Petitioner as the shooter during a showup identification procedure[1] that took place approximately thirty minutes after the crime. *Id.*

---

[1] A show-up is an identification procedure in which the police present a single suspect to an eyewitness and then ask the eyewitness whether the suspect is the perpetrator.

For his actions, Petitioner was charged, by Kings County Indictment Number 787/2015, with one count of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]) and two counts of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03[1][b], [3]). *Id*. ¶ 7. Prior to trial, Petitioner moved to suppress Abdalla's identification evidence on the ground that the showup identification procedure was impermissibly suggestive. *Id*. ¶ 8. Following a pretrial suppression hearing, the court denied Petitioner's motion to suppress Abdalla's identification evidence. *Id*. The court held that the showup identification procedure did not violate due process, because the procedure was conducted shortly after the crime and near the scene of the crime. *Id*.

Petitioner's case proceeded to trial. Because Petitioner waived his right to a jury trial, the trial court was the finder of fact. During the People's case, the People introduced the following evidence: (1) surveillance videos, which showed the shooting and its immediate aftermath; (2) the black jacket and red scarf that defendant was wearing at the time of his arrest, which matched the clothing worn by the shooter on the surveillance videos; and (3) Mosleh Abdalla's showup identification of Petitioner. *Id*. ¶ 9. When the prosecutor asked Abdalla whether he saw the shooter in the courtroom, Abdalla testified that he did not see him. *Id*. On December 12, 2016, the trial court found Petitioner guilty of one count of Murder in the Second Degree and two counts of Criminal Possession of a Weapon in the Second Degree. *Id*.

On January 4, 2017, the court sentenced Petitioner to a prison term of twenty-three years to life on the murder count. *Id*. ¶ 10. The court sentenced Petitioner, as a second felony offender, to prison terms of ten years on the two weapon possession counts, to be followed by five years of post-release supervision. *Id*. The court ordered the sentences to run concurrently. *Id*.

## II. Post-Conviction Activities

Petitioner appealed his conviction to the Appellate Division, Second Department. *Id*. ¶ 11. In his brief on appeal, Petitioner raised the following five claims:

1. The trial court improperly admitted Abdalla's showup identification, because the showup identification procedure was unduly suggestive;
2. The evidence was legally insufficient to establish beyond a reasonable doubt that defendant was the shooter;
3. The trial court violated defendant's Confrontation Clause rights, by admitting into evidence the autopsy report and a medical examiner's testimony about the autopsy report;
4. The trial court improperly admitted into evidence the black jacket, red scarf, and winter hat that the police recovered from defendant at the time of his arrest, because the People failed to establish an adequate chain of custody for this evidence; and
5. Defendant's sentence on the murder count was excessive.

*Id*. ¶ 12. In a decision and order dated November 14, 2018, the Appellate Division affirmed Petitioner's judgment of conviction. *People v. Lancaster*, 166 A.D.3d 807 (2d Dep't 2018). *Id*. The Appellate Division held that Petitioner's Confrontation Clause claim was unpreserved for appellate review. *Id*. at 809. The Appellate Division held that all of Petitioner's claims were meritless. *Id*. at 808–10. By pro se letter dated December 12, 2018, Petitioner requested permission to appeal to the New York Court of Appeals. *Id*. ¶ 13. In his letter, Petitioner raised a new claim: that the police illegally detained Petitioner for the showup identification procedure. *Id*. Petitioner also asserted that the showup identification procedure was unduly suggestive and that the evidence was insufficient to establish defendant's guilt beyond a reasonable doubt. *Id*. Petitioner concluded his letter, by saying: "For the above stated reasons, and reasons stated in the appellant's brief, this court should grant appellant [a] certificate granting leave to appeal to this court." *Id*. By certificate dated March 26, 2019, the Court of Appeals denied Petitioner's application for leave to appeal. *People v. Lancaster*, 33 N.Y.3d 950 (2019) (Garcia, J.).

Petitioner is incarcerated pursuant to his judgment of conviction. *Id*. ¶ 14. By pro se petition dated March 9, 2020, Petitioner now applies for a federal writ of *habeas corpus*. *Id*. ¶

15. Petitioner raises the following three claims:

   1. The trial court improperly admitted Abdalla's showup identification, because the showup identification procedure was impermissibly suggestive;
   2. The evidence was legally insufficient to establish beyond a reasonable doubt that defendant was the shooter; and
   3. The trial court improperly admitted into evidence the black jacket, red scarf, and winter hat that the police recovered from defendant at the time of his arrest, because the prosecution failed to establish an adequate chain of custody for this evidence.

*Id*. The parties agree Petitioner has exhausted his state remedies with respect to his first two claims. *Id*. ¶ 16. The Government argues Petitioner did not exhaust his state remedies with respect to his third claim, because he never alerted the state courts that he was raising this chain-of-custody claim as a federal constitutional claim. *Id*. However, the Government also argues that because Petitioner no longer has a state forum in which to raise this claim, this claim should be deemed exhausted, but rejected on the basis of Petitioner's state procedural default. *Id.* Petitioner filed the instant Petition on April 1, 2020. ECF No. 1. The Government submitted its brief on December 15, 2020. ECF No. 9. Petitioner did not reply.

## LEGAL STANDARD

The Court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A federal *habeas* court may only consider whether a person is in custody pursuant to a state court judgment "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA requires federal courts to apply a "highly deferential standard" when conducting *habeas corpus* review of state court decisions and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).

Because the Court of Appeals, Appellate Division, and the trial court adjudicated Petitioner's claims and properly considered the federal jurisprudence, the Court's "review is

4

extremely deferential: a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (internal quotation marks omitted). With these legal principles in mind, the Court now turns to the analysis of Petitioner's request for *habeas* relief.

## DISCUSSION

### I. The Showup Identification Procedure Claim Fails.

Petitioner argues the police showup identification procedure was unduly suggestive because he was handcuffed and in the vicinity of police officers and police cars when it occurred. Petition at 2–3. The Appellate Division rejected Petitioner's claim holding "[t]he People met their initial burden of establishing the reasonableness of the police conduct and the lack of undue suggestiveness in the showup identification through the testimony of the detective who brought the witness to the showup location, and through the testimony of the police officer who apprehended the defendant." *People v. Lancaster*, 166 A.D.3d at 808 (internal quotation marks and citations omitted). This Court agrees.

"In federal habeas review, the question of whether an out-of-court identification procedure is so suggestive that it violates a [petitioner's] due process rights is a mixed question of law and fact. Under 28 U.S.C. § 2254(e), the findings of fact which underlie the state court's conclusion are entitled to the statutory presumption of correctness by the reviewing federal *habeas* court. Unless rebutted by clear and convincing evidence, the habeas court must accept the facts found by the state court as true." *Sanford v. Burge*, 334 F. Supp. 2d 289, 301 (E.D.N.Y. 2004) (Gershon, J.) (adopting Report and Recommendation of Mag. Go) (citations omitted). Here, Petitioner has provided no evidence to rebut the facts found by the state, so this Court

5

accepts them as true.

"Due process protects the right not to be the object of suggestive police identification procedures that create a very substantial likelihood of irreparable misidentification." *United States v. Diaz*, 986 F.3d 202, 206–07 (2d Cir. 2021) (internal quotations omitted). Courts ask (1) was there a "very substantial likelihood of irreparable misidentification" and if so, (2) did the "totality of the circumstances" make the identification not independently reliable. *Brisco v. Ercole*, 565 F.3d 80, 88–89 (2d Cir. 2009). "[C]ourts have admitted identification evidence from show-ups held in close temporal and geographic proximity to the crime scene." *Id.* (citations omitted).

Here, the out of court identification was not unduly suggestive. The fact that Petitioner was handcuffed and surrounded by the police, does not render the identification unduly suggestive. *See United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) ("The fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights also did not render the pretrial identification procedure unnecessarily suggestive."); *see also Mack v. McAuliffe*, 16-CV-4050, 2018 WL 6251340 at *4 (E.D.N.Y. Nov. 28, 2018) (Chen, J.) (holding showup was not unduly suggestive even though, at the time of the showup, defendant was handcuffed and in the presence of police officers); *Cardova v. LaValley*, 123 F. Supp. 3d 387, 395 (E.D.N.Y. 2015) (Kuntz, J.) (same); *Berry v. Cunningham*, 09-CV-3022, 2012 WL 4174875 at *5 (E.D.N.Y. Sept. 19, 2012) (Brodie, J.) (same).

Moreover, the identification occurred in relatively "close temporal and geographic proximity to the crime scene," which weighs against finding it unduly suggestive. *Brisco*, 565 F.3d at 89; *see United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994); *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972); *United States v. Sanchez*, 422 F.2d 1198,

1200 (2d Cir. 1970) (explaining such showup identifications are "consistent with good police work" in that they "insure the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh.") (internal quotation marks and citation omitted). Here, the showup identification procedure occurred approximately thirty minutes after the crime, about one block from the scene of the crime, *see* Trial Transcript at 72–74, ECF No. 9-4, well within the time bounds of what federal courts have upheld as reasonable for showup identification procedures. *See Cummings*, 455 F.2d at 716 (holding showup identification was not unnecessarily suggestive where showup took place thirty minutes after the crime at the scene of the crime); *United States v. Bordeaux*, 19-CR-06180, 2020 WL 6268251 at *1, *3 (W.D.N.Y. Oct. 26, 2020) (Wolford, J.) (holding showup identification was not unnecessarily suggestive where showup identification took place two hours after the crime near the scene of the crime); *Toye v. Racette*, 15-CV-515, 2017 WL 8894736, at *13–*14 (N.D.N.Y. June 7, 2017) (Stewart, Mag.) (holding showup identification was not unnecessarily suggestive where showup took place forty minutes after crime and a few blocks from the scene of the crime), *adopted report and recommendation*, 2018 WL 679481 (N.D.N.Y. Feb. 2, 2018) (Sannes, J.).

Because the show-up identification was not unduly suggestive, this Court need not consider whether the identification was independently reliable. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). Even so, the identification here was independently reliable. To assess independent reliability, courts consider several factors: (1) the opportunity of the witness to view the criminal at the time of the crime (2) the witness's degree of attention (3) the accuracy of the witness's prior description of the criminal (4) the level of certainty demonstrated by the witness at the confrontation, (5) and the length of time between the crime and the confrontation.

7

*McBride v. Senkowski*, 98-CV-8663, 2002 WL 523275, at *5 (S.D.N.Y. Apr. 8, 2002) (Mukasey, J) (adopting report and recommendation of Mag. Katz) (citing *Manson v. Brathwaite*, 432 U.S. 98, 110–14, 97 (1977) and *Neil v. Biggers*, 409 U.S. 188, 199–200, (1972)) (internal quotation marks omitted).

Considering the factors in totality, Mosleh Abdallas's identification of Petitioner after the murder is independently reliable. At trial, Abdalla was unable to identify Petitioner as the shooter. However, Abdallah testified that he saw the shooter's face "[w]hen he took out the gun and start[*sic*] shooting." Trial Transcript at 74. Later, when police conducted the showup identification, the police asked him to point out the shooter and Abdalla identified "the killer and his brother." *Id*. at 73. He described him to the police officer as "[t]he one who was wearing the red scarf and hoodie." *Id*. at 74. Abdalla testified that during the identification it was "light out" and he could see the shooter's face clearly. *Id*. at 73–74. *See United States v. Frampton*, 382 F.3d 213, 222 (2d Cir. 2004) (the testimony of a single eyewitness is generally sufficient to support a conviction); *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979) (same). The video footage confirms Abdallah's account. Right before the shooting, Abdalla entered the bodega, carrying a crate and then walked by the shooter. Resp. Brief at 6. When the shooter raised his gun, Abdalla turned his head to look at him. *Id*. *See United States v. Wong*, 40 F.3d 1347, 1360 (2d Cir. 1994) (witness's identification was reliable, even though witness observed defendant's face for only two to three seconds); *Gonzalez v. Hammock*, 639 F.2d 844, 847 (2d Cir. 1980) ("A mere glance would be sufficient for identification . . . ."). The Court is satisfied that this sufficiently proves Abdalla's showup identification was independently reliable. Accordingly, the Appellate Division's conclusion that the trial court did not err in permitting the use of the showup identification procedure was a reasonable application of federal constitutional

precedent. Therefore, Petitioner's first claim is DENIED.

## II. The Legal Sufficiency of the Evidence Claim Fails.

Petitioner also seeks *habeas* relief on the grounds that "the trial court erred in denying defendant's motion for acquittal" because the evidence was legally insufficient for a conviction. Pet. at 3. Petitioner argues "the[re] was [no] direct proof that petitioner has in fact committed the crime [of] which he was convicted . . . ." *Id.* (cleaned up). On his direct appeal, the Appellate Division rejected this claim on the merits, finding that when "[v]iewing the evidence in the light most favorable to the prosecution, we find that that it was legally sufficient to establish the defendant's identity beyond a reasonable doubt." *People v. Lancaster*, 166 A.D.3d at 808–09(citations omitted). This Court agrees.

Petitioners bear a heavy burden when bringing a legal sufficiency claim. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) ("*Jackson* claims face a high bar in federal *habeas* proceedings . . . ."). Where a state court has rejected a claim on the merits, a federal court may grant a defendant *habeas* relief on an issue of law only if the state court's decision is contrary to, or an unreasonable application of, the relevant Supreme Court precedent. *See Smith v. Wenderlich*, 826 F.3d 641, 649 (2d Cir. 2016). Relevant Supreme Court precedent holds evidence is legally sufficient to establish a defendant's guilt so long as any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 326 (1979) ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). "[A] federal court may not overturn a state court decision rejecting a

sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (internal quotation marks omitted). Where the state has first rejected the sufficiency claim on the merits, federal habeas deference is doubled. *Id.* at 2 ("the deference to state court decisions required by § 2254(d)" is to be "applied to the [ ] already deferential review" of *Jackson*").

The Government interprets Petitioner's Points I and III of the Petition to also challenge the admission into evidence of Abdalla's showup identification and the clothes that were recovered from Petitioner at the time of his arrest. Resp. Brief at 9. They argue these claims have no effect on the legal sufficiency of the evidence. *Id.* In evaluating the legal sufficiency of the evidence introduced at trial, "'a reviewing court must consider all of the evidence admitted by the trial court,' regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (citation omitted); *see Lockhart v. Nelson*, 488 U.S. 33, 40–42 (1988) (same); *United States v. Cruz*, 363 F.3d 187, 197 (2d Cir. 2004) (same). Thus, the Court considers this evidence in evaluating Petitioner's claim.

Furthermore, to the extent Petitioner seeks to challenge the weight of the evidence, the Court rejects that claim. The question of whether a verdict is against the weight of the evidence presents only a question of state law. *See* N.Y. Crim. Proc. Law § 470.15(5); *People v. Bleakley*, 69 N.Y.2d 490, 494–95 (1987). Because a claim regarding the weight of the evidence does not raise a federal constitutional issue, the claim provides no basis to grant a writ of *habeas corpus*. *See McKinnon v. Superintendent*, *GreatMeadow Correctional Facility*, 355 Fed. App'x 469, 475 (2d Cir. 2009) (summary order). Thus, the Court solely addresses whether the evidence was legally sufficient.

Here, the Appellate Division's decision to reject Petitioner's claim on the merits was not objectively unreasonable. First, comprehensive surveillance footage showed Petitioner in the moments before, during, and after the murder which the sentencing court found sufficient to identify the Petitioner as the perpetrator. Sentencing Transcript ("Sent. Tr.") at 15 ¶ 7–8 (saying that the surveillance videos from the bodega's security cameras "completely show[ ] this defendant committing the murderous act from various angles"). Though Petitioner claims his face is not visible in the surveillance video, it does capture his "height, weight, build, and walk." Resp. Brief at 4. *People v. John*, 51 A.D.3d 819, 820 (2d Dep't 2008) (holding a witness can make an identification of a defendant on the basis of the defendant's height, weight, clothing, walk, or voice, even if the witness never saw the defendant's face); *see also People v. Brown*, 145 A.D.3d 1549, 1549–50 (4th Dep't 2016) (holding evidence was legally sufficient, in light of police officers' identification of defendant from surveillance video). Furthermore, the Petitioner's presence near the crime scene, moments after the crime, wearing identical clothing worn by the shooter, tended to prove Petitioner was the shooter. *See Dowtin v. Cohen*, 179 Fed. App'x 737, 739 (2d Cir. 2006) (summary order) (holding witness's identification of defendant on basis of his clothing supported conclusion that defendant was not actually innocent of crime); *Garcia v. Artus*, 08-CV-1423, 2010 WL 1816333 at *12–*13 (E.D.N.Y. May 5, 2010) (Bianco, J.) (holding evidence was legally sufficient where, *inter alia*, defendant was arrested shortly after the crime near the scene of the crime). And, as addressed previously, Abdalla identified Petitioner as the shooter in a showup identification procedure. And the Court has determined that the identification procedure was not unduly suggestive and that it was independently reliable. *See United States v. Frampton*, 382 F.3d 213, 222 (2d Cir. 2004) (the testimony of a single eyewitness is generally sufficient to support a conviction); *United States v. Danzey*, 594

F.2d 905, 916 (2d Cir. 1979) (same).

Taking into account the highly deferential standard AEDPA requires, this Court is satisfied that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have convicted Petitioner of the crime beyond a reasonable doubt. Accordingly, the Appellate Division's decision on this claim was neither contrary to nor an unreasonable application of federal constitutional law and Petitioner's second habeas claim is DENIED.

III. **The Chain of Custody Claim Fails.**

Petitioner next argues the trial court erroneously admitted into evidence the black jacket, red scarf, and winter hat that were recovered from Petitioner at the time of his arrest because the prosecution did not establish an "unbroken chain of custody" at trial. Pet. at 4. The Appellate Division disagreed, holding that "the People established a sufficient chain of custody of certain clothing recovered from the defendant by providing reasonable assurances of the identity and unchanged condition of the clothing between its recovery and the trial. Any deficiencies in the chain of custody went only to the weight to be accorded the evidence, not its admissibility" *Lancaster*, 166 A.D.3d at 809 (citations omitted). The Government argues, and Petitioner does not rebut, that this claim is procedurally defaulted. This Court agrees with the Government.

Generally, a § 2254 habeas petitioner serving a state sentence must first exhaust all available state court remedies. 28 U.S.C. § 2254(b); *Baldwin v. Reese*, 541 U.S. 27, 29, (2004). "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of the State of*

*N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citations omitted). A court may consider an unexhausted claim that is procedurally barred by state law to be exhausted. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.2001) (quoting *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997)). However, when "'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)). Such is the case here. Petitioner failed to exhaust this claim, but no longer has a forum in which to exhaust it. Thus, it is procedurally defaulted and must be DENIED.

Petitioner failed to exhaust his claim because he never alerted a state court to the federal constitutional nature of the claim. *Smith v. Duncan*, 411 F.3d 340, 346–50 (2d Cir. 2005); *Daye v. Attorney Gen. of the State of N.Y.*, 696 F.2d 186, 190–92 (2d Cir. 1982). In his Appellate Division brief, Petitioner did not cite to the U.S. Constitution, any federal cases or any state cases that employed federal constitutional analysis regarding admissibility of the evidence. *Id.* (listing the options to invoke the federal nature of a claim). *See* Def. App. Brief at 12–13, Respondent's Ex. B, ECF No. 9-7.

Furthermore, Petitioner can no longer obtain review of this constitutional claim in state court. New York law entitles a Defendant to only one direct appeal, which Petitioner has already exercised. *See Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). And Petitioner cannot raise this claim in a motion to vacate his judgment of conviction pursuant to Criminal Procedure Law § 440.10, because, in a 440.10 proceeding, a court is required to deny a claim if the claim could have been raised on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). *St. Helen v. Senkowski*, 374 F.3d at 183-84; *Washington v. James*, 996 F.2d at 1447; *People v. Cooks*, 67

N.Y.2d 100, 103–04 (1986).

A court may review a claim, despite a defendant's state procedural default, if the defendant demonstrates cause for the default and the resulting prejudice, or actual innocence. *See Jones v. Keane*, 329 F.3d 290, 296 (2d Cir. 2003). Petitioner has demonstrated neither. Furthermore, even if the Petitioner had not procedurally defaulted on this claim, the Appellate Division's adjudication of this claim on the merits was not contrary to, or an unreasonable application of, any Supreme Court precedent. Thus, Petitioner's final *habeas* claim is DENIED.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

**s/ WFK**
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 13, 2021
      Brooklyn, New York